IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

DARIN WILLIAM McQUITTY,                    §
                                           §
            Petitioner,                    §
                                           §
v.                                         §          2:14-CV-215
                                           §
LORIE DAVIS, Director,                     §
Texas Department of Criminal Justice,      §
Correctional Institutions Division,        §
                                           §
            Respondent.                    §

## REPORT AND RECOMMENDATION
## TO DENY PETITION FOR A WRIT OF HABEAS CORPUS

Petitioner DARIN WILLIAM McQUITTY has filed with this Court a Petition for a Writ of

Habeas Corpus by a Person in State Custody challenging his conviction out of the 181st Judicial

District Court of Randall County, Texas, for the felony offense of aggravated kidnapping and the

resultant 85-year sentence. For the reasons set forth below, the United States Magistrate Judge is of

the opinion petitioner's application for federal habeas corpus relief should be DENIED.

I.
FACTUAL AND PROCEDURAL HISTORY

For an 8-day period, from April 10, 2011 through April 18, 2011, petitioner and Tiffany

Fisher were together at Fisher's residence in Dumas, and in various hotels, restaurants, stores, parks or

rural areas in or around Amarillo, Texas. During this time, Fisher met alone with petitioner's

attorney, Mr. Todd Hatter, in Amarillo to discuss signing an affidavit of non-prosecution regarding a

prior assault charge pending against petitioner. Vol. 3 at 163-65, 177-78. On the late afternoon of

April 15, 2011, Fisher met alone with a notary public employed by Mr. Hatter to sign the affidavit of

non-prosecution. Vol. 3 at 205-09; Vol. 4 at 193-94. Later that evening, petitioner and Fisher dined

at a local restaurant with petitioner's nephew and wife. Vol. 5 at 12-13. In the early morning of April

18, 2011, petitioner and Fisher were driving down a rural caliche road at a high rate of speed when

Fisher opened the door and either jumped or was pushed out of the moving vehicle. Vol. 3 at 229-30.

On the morning of April 18, 2011, Fisher woke up in the front passenger seat of her vehicle which

was parked in the employee parking lot of an Amarillo hospital. Petitioner was asleep in the driver's

seat of the parked vehicle. Vol. 3 at 236. As a nurse walked by the vehicle, Fisher, who was badly

swollen, bruised and bleeding, made eye contact with the nurse and mouthed, "Please call 911." Vol.

3 at 21-22, 27, 237-38. Fisher also mouthed to another hospital employee, "Don't wake him. He has

a gun." Vol. 3 at 40-41. Police soon arrived. When Fisher was removed from the vehicle and was

asked "what had happened, who had [done] this to her," she whispered, "McQuitty did it." Vol. 3 at

90. When petitioner was removed from the vehicle, he appeared to have injuries on his hands over the

knuckles, primarily the right hand. Vol. 3 at 95. Petitioner was booked into the Potter County

Detention Center for aggravated assault, and Fisher was admitted to a hospital for multiple injuries.

Vol. 3 at 74-75, 90. Through initial statements made at the hospital and to law enforcement over a

period of several months, Fisher related she had been held by petitioner for this 8-day period against

her will through threats of deadly force toward herself and her children and other means of

intimidation, had repeatedly been beaten and sexually assaulted by petitioner during this period, and

had otherwise been terrorized by petitioner. Vol. 3 at 104; Vol. 5 at 40-56.

On September 21, 2011, petitioner was charged by Indictment with the 1st degree felony

offense of aggravated kidnapping, alleged to have occurred on or about April 18, 2011.[1] *State v. McQuitty*, Cause No. 22,434. Specifically, it was alleged petitioner:

> did then and there, with the intent to facilitate the commission of a felony, to-wit: aggravated sexual assault or aggravated assault or to facilitate the flight after the attempt or commission of said felony, or with the intent to inflict bodily injury on Tiffany Fisher or with the intent to violate or abuse sexually Tiffany Fisher or with the intent to terrorize Tiffany Fisher, intentionally or knowingly abduct Tiffany Fisher by restricting the movements of said Tiffany Fisher without her consent so as to interfere substantially with her liberty, by moving her from one place to another or confining her, with the intent to prevent her liberation, by secreting or holding Tiffany Fisher in a place where she was not likely to be found.

Petitioner pled not guilty to the charges.

Prior to trial, the State abandoned certain charging language in the Indictment so as to allege petitioner:

> did then and there with the intent to violate or abuse sexually Tiffany Fisher or with the intent to terrorize Tiffany Fisher, intentionally or knowingly abduct Tiffany Fisher by restricting the movements of said Tiffany Fisher without her consent so as to interfere substantially with her liberty, by moving her from one place to another or confining her, with the intent to prevent her liberation, by secreting or holding Tiffany Fisher in a place where she was not likely to be found.

A jury trial began on February 7, 2012 in the 181st Judicial District Court of Randall County, Texas.

On February 9, 2012, the jury found petitioner guilty of the offense of aggravated kidnapping as alleged in the Indictment.[2] On February 10, 2012, the jury assessed petitioner's punishment at eighty-five (85) years imprisonment in the Texas Department of Criminal Justice, Correctional Institutions

---

[1] Petitioner was also indicted for the offense of aggravated assault. Prior to trial, the State abandoned the aggravated assault charge as well as a Paragraph B charging aggravated kidnapping which had alleged petitioner:

> did then and there intentionally and knowingly abduct Tiffany Fisher by restricting the movements of said Tiffany Fisher without her consent so as to interfere substantially with her liberty, by moving her from one place to another or confining her, with the intent to prevent her liberation, by using or threatening to use deadly force, namely by striking her about the face and body with his hands or pushing her out of a moving vehicle, and the defendant did then and there use and exhibit a deadly weapon, to-wit: his hands or a road, during the commission of said offense.

[2] The jury was presented with the options of finding petitioner guilty of lesser included offenses, as well as rendering a verdict of not guilty.

Division, and a $10,000 fine.

Petitioner, represented by new counsel, appealed the conviction and sentence to the Seventh Court of Appeals raising four issues for review: (1) sufficiency of the evidence, (2) petitioner's entitlement to a voluntary release instruction during punishment, (3) the exclusion of attorney Hatter's testimony at trial, and (4) the propriety of the State's closing argument. *McQuitty v. State*, No. 07-12-00079-CR (Tex. App.–Amarillo 2013). On February 28, 2013, the state appellate court affirmed the trial court judgment. In addressing petitioner's sufficiency claim, the court noted petitioner's contentions that there was evidence Fisher was with petitioner willingly, and that if she had not been with petitioner willingly, she had numerous opportunities to escape. The court found that while the evidence did indicate Fisher might have had multiple opportunities to escape from petitioner, the evidence also supported the jury's implied finding that petitioner's threats and repeated assaultive conduct were sufficient to terrorize Fisher to an extent necessary to prevent her from attempting to escape. The court concluded there was sufficient evidence to allow a rational jury to conclude Fisher did not willingly accompany petitioner during the period of April 10 through April 18, 2011, and that the jury's finding that petitioner was guilty of aggravated kidnapping was supported by sufficient evidence.

Petitioner sought review of the intermediate appellate court's opinion by filing a petition for discretionary review with the Texas Court of Criminal Appeals. On July 24, 2013, the Court of Criminal Appeals refused the petition. *McQuitty v. State*, P.D.R.No. 292-13.

On or about April 21, 2014, petitioner, acting *pro se*, filed an application for state habeas corpus, alleging ineffective assistance of trial and appellate counsel, that the trial court abused its discretion, insufficiency of the evidence, and improper venue, the same grounds he presents in this federal petition. The State filed an answer opposing state habeas relief and attaching affidavits of both

trial and appellate counsel addressing petitioner's allegations of ineffective assistance of counsel.  On

July 11, 2014, the Texas Court of Criminal Appeals denied relief without written order.  *Ex parte*

*McQuitty*, App. No. WR 81,402-01.  On October 10, 2014, this Court received the federal petition for

habeas relief.  On December 16, 2014, the State filed its answer opposing federal habeas corpus relief.

II.
<u>PETITIONER'S ALLEGATIONS</u>

Petitioner contends he is being held in violation of the Constitution and laws of the United

States for the following reasons:

1.  The State failed to prove venue in Randall County, Texas;

2.  Petitioner was denied a fair trial as a result of the following trial court errors:

   a.  commenting during voir dire that the surest way to get on a jury was to remain silent;

   b.  by not correcting a comment made by the State during voir dire;

   c.  by requiring petitioner to waive the attorney-client privilege in order for his counsel from another case to be able to testify; and

   d.  by failing to grant a mistrial when Deputy Dunn testified that he had "prior dealings" with petitioner.

3.  Petitioner was denied effective assistance of counsel when trial counsel:

   a.  failed to object to the trial court ruling that petitioner would have to waive his attorney-client privilege in order for his previous attorney and a notary public to testify about Fisher's physical condition when they met with her during the 8-day period she was with petitioner; and

   b.  failed to object to the State's reference, in closing argument, to the kidnappings of Elizabeth Smart and Jaycee Duggard.

4.  Petitioner was denied effective assistance of counsel when appellate counsel failed to raise the following issues on direct appeal:

   a.  that venue was not proper in Randall County, Texas; and

       b.      that testimony referencing an extraneous offense was improperly admitted.

5.      The evidence is legally and factually insufficient to support petitioner's conviction.

## III.
## STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody under a state court judgment shall <u>not</u> be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication:

1.      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

2.      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). A state court decision will be an unreasonable application of clearly established precedent if it correctly identifies the applicable rule but applies it objectively unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08; *see also Neal v. Puckett*, 286 F.3d 230, 236, 244-46 (5th Cir. 2002) (en banc per curiam), *cert. denied*, 537 U.S. 1104 (2003). A determination of a factual issue made by a state court shall be presumed to be correct. 28 U.S.C. § 2254(e)(1). The applicant has the burden of rebutting this presumption of correctness by clear and convincing evidence. *Hill*, 210 F.3d at 485. When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the

merits, which is entitled to this presumption. *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex.Crim.App. 1997).

Whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning. *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. *Id.* This is so whether or not the state court decision reveals which of the elements, in a multi-part claim, it found insufficient. Section 2254(d) applies when a "claim," not a component of one, has been adjudicated. *Id.*

Here, petitioner filed a state habeas application challenging the constitutionality of his conviction and sentence alleging the same grounds alleged in the instant federal habeas petition. The Court of Criminal Appeals denied petitioner's state habeas application on June 11, 2014 without written order. *Ex parte McQuitty*, App. No. WR 81,402-01. The ruling of the Texas Court of Criminal Appeals constitutes an adjudication of petitioner's claims on the merits. *Bledsue v. Johnson*, 188 F.3d 250, 257 (5th Cir. 1999). Consequently, this Court's review is limited to a determination of whether petitioner has shown the state court's decision that petitioner was not denied effective assistance of counsel at trial or on appeal, was not denied a fair trial due to trial court error, that the evidence was legally and factually sufficient to support petitioner's conviction, and that venue was proper in Randall County, Texas, was based on an unreasonable determination of the facts in light of the evidence before the state court, or was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.

V.
MERITS

In his form federal habeas application, petitioner has not alleged, much less proven, the threshold standards to obtain federal habeas relief. Petitioner has merely repeated the same allegations from his state habeas application without attempting to show in what way the state court's denial of relief was based on an unreasonable application of federal law as determined by the United States Supreme Court, or on an unreasonable determination of facts in light of the evidence.

In the conclusion of his memorandum submitted in support of his federal habeas application, in statements addressing his claim of lack of venue, petitioner includes the sentence, "This is Contrary to established Federal Law." As the concluding paragraph of this conclusion, petitioner states:

See: Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010).

> "A State Court decision is contrary to established Federal precedent if the State court applies a rule that contradicts the governing law set forth in the United States Supreme Court. A State Court decision will also be contrary if it confronts facts materially indistinguishable from a Supreme Court decision and arrives at a different result."

This is the extent of petitioner's argument that he has met the threshold standards for federal habeas relief.

Petitioner has not established the mandatory predicate that must be met before this Court can grant federal habeas relief. Consequently, all of petitioner's claims are foreclosed by the AEDPA re-litigation bar and petitioner's federal habeas application is subject to denial solely on this basis. Nonetheless, the undersigned has briefly addressed petitioner's claims to show petitioner would not be entitled to federal habeas relief on the merits of each claim.

A. Venue

Petitioner contends the State failed to prove venue of the aggravated kidnapping offense was proper in Randall County, Texas. Specifically, petitioner contends the only evidence that any crime

was committed in Randall County was Fisher's testimony.

The State must establish venue over the offense by a preponderance of the evidence, not proof beyond a reasonable doubt. *United States v. Bowers*, 660 F.2d 527, 531 (5th Cir. 1981); Tex. Code Crim. Proc. art. 13.17. During trial, the State elicited testimony that petitioner physically and sexually assaulted Fisher on the "gravel" or "dirt" part of Hope Road. The State also elicited testimony that the "gravel" or "dirt" part of Hope Road is located in Randall County. Vol. 3, at 104-05; 109-10; 225-35; Vol. 4 at 133-34. The State fully met its burden of establishing venue. Petitioner's claim is without merit.

Moreover, the Texas Court of Criminal Appeals denied this claim on state habeas review. Petitioner has not shown the state court's denial was based on an unreasonable application of federal law as determined by the United States Supreme Court, or on an unreasonable determination of facts in light of the evidence. Petitioner's claim must be denied.

## B. Denial of Due Process Due to Trial Court Errors

Petitioner appears to argue he was denied due process due to various errors committed by the trial court. Petitioner's claims should be denied.

### 1. *Court's Comment to the Venire During Voir Dire*

During the voir dire of the jury, the trial court stated:

I'm asked sometimes as a Judge and I was when I was an attorney, too, what can I say to get out of jury duty? You know, I have friends that ask me that. And I – and I understand that, but we wouldn't want you to say something that wasn't truthful just to get out of jury service. On the other hand, we wouldn't want you to remain quiet about something that we should know that might get you off the panel. So again, we just rely on your honesty with us. We need you to look in your heart and your mind and tell us whether or not you can be fair and impartial. And really, ultimately, you're the only one that know that and we'll just have to rely on you to tell us that.

I'm going to give you a little hint. It's quiet people that end up making the jury, because we don't – we've got some information about you here, but we don't have a whole lot of information about you. At the end of this process the attorneys will look at their lists, look at the notes that they've made about you, and it's just human nature, if they don't write something down about you, then they're going to think, well, that person must have been okay, I'm going to leave them on here. And then sometimes it turns out it really was just because you didn't say anything at all and so they didn't make any notes. So please – if that encourages you to speak out, please do that. I know they appreciate it and this goes a lot smoother and is a lot more interesting for you and for us when people talk and tell us their feelings and give us kind of, you know, an idea of what you're thinking about this particular case.

Vol. 2 at 33-34. Petitioner has construed these comments to be an instruction by the trial court to the venire that by remaining silent, a person could be on petitioner's jury. Petitioner further argues the trial court's statements allowed venire members who may have been prejudiced a means to be selected for petitioner's jury.

The Court does not accept petitioner interpretation of the trial court's remarks. It is clear from a reading of the trial court's statements to the venire that he was simply encouraging openness and honesty from those summonsed for possible jury duty, acknowledging the uncomfortableness and unfamiliarity of the venire with the jury selection process, and urging the venire members to "speak out" in order to discover any possible biases or prejudices. Defense counsel was permitted to question all venire members during voir dire, both as a group and individually. Petitioner has not alleged, much less demonstrated, any particular juror who served on petitioner's jury was prejudiced against petitioner or biased in favor of the State. Petitioner's claim is conclusory and without merit.

Moreover, the Texas Court of Criminal Appeals denied this claim when it was raised before the state on state habeas review. Petitioner has not shown the state court's denial was based on an unreasonable application of federal law as determined by the United States Supreme Court, or on an unreasonable determination of facts in light of the evidence. Petitioner's claim must be denied.

## 2. *State's Comment During Voir Dire*

During voir dire, the prosecutor discussed the State's burden to prove petitioner intended to commit the various elements of the charged offense, focusing primarily on the statutory definition of "abduct" and the use of the term "restrain," as well as the use of the phrases "restrict a person's movements without consent" and "moving the person from one place to another." The prosecutor discussed the use of the phrase "not likely to be found" in the definition of "abduct." Vol. 2 at 53-75. At one point, the prosecutor gave a hypothetical where an individual had formed the intent to abduct and committed an overt act in furtherance of that intent, but stopped prior to completing the abduction, and asked the venire if the individual had abducted the victim. When a prospective juror said, "yes," the prosecutor then stated:

> Okay. What – what has he done? I mean, he hasn't physically actually taken her and thrown her into a place where she *can't get away*.

Vol. 2 at 55-56 (emphasis added). The prospective juror replied that the individual could not "take her anywhere and keep her away." In response the prosecutor inquired, "[h]ow do you know that that's what his intent is?" The prospective juror responded, "You don't until after you investigate it."

After the venire panel was released for a lunch break, the trial court indicated confusion over the discussion of the term "restrain," noting its use in the lesser offense of Unlawful Restraint. The State clarified that the term "restrain" was also utilized in the definition of "abduct," an element of the offense of Aggravated Kidnapping, and thus the need for the discussion of the term. Vol. 2 at 82-84.

By this ground, petitioner contends that when the trial court allowed the State prosecutor to say, "he hasn't physically actually taken her and thrown her into a place where she *can't get away*," the court allowed the State to "misdirect" the venire panel as to the applicable law. Specifically, petitioner argues that by making the above comment, the prosecutor in essence "instructed the jury

that 'can't get away' is the same as 'not likely to be found,'" the actual phrase used in the definition of "abduct." Petitioner concludes these statements during voir dire reduced the burden of proof to the degree the State did not have to prove all of the elements of aggravated kidnapping. Petitioner contends the trial court's confusion regarding the discussion of the term "restrain" indicated the trial court recognized the State had misstated the law to the venire panel. Petitioner concludes the trial court erred and/or abused its discretion in allowing the State's voir dire statement, resulting in the denial of a fair trial and due process.

The State's remark was not a clear instruction to the prospective jurors that "can't get away" is the same as "not likely to be found." Further, as argued by respondent and as clarified in the detail of the voir dire discussions set out above, any misstatement by the State, isolated as it was, was cleared up by the continued discussions regarding the elements of the charged offense and had little, if any, relevance in the context of the extended voir dire. More importantly, since the jury was charged on the law at the end of the case, the jury charge would have controlled. Not only does the Court find no error, but if error were committed, any such error would be harmless.

Again, the Texas Court of Criminal Appeals denied this claim raised on state habeas review. Petitioner has not shown the state court's denial was based on an unreasonable application of federal law as determined by the United States Supreme Court, or on an unreasonable determination of facts in light of the evidence. Petitioner's claim must be denied.

### 3. *Waiver of Attorney-Client Privilege*

Fisher testified that after she came to Amarillo with petitioner on April 12, 2011, she met with petitioner's then attorney, Mr. Hatter, to discuss an affidavit of non-prosecution pertaining to a criminal charge pending against petitioner for an assault of Fisher on August 25, 2010. Fisher also testified that on the evening of April 15, 2011, she met with a notary employed by Mr. Hatter to sign

the affidavit of non-prosecution. Fisher testified the meeting with Hatter took place after petitioner had "punched her in the face" and choked her on April 10, and the meeting with the notary took place after petitioner had beaten her on or about the head, face and mouth on the morning of the meeting.

After the State rested its case in chief, the trial court called Mr. Hatter as a potential defense witness. Mr. Hatter testified outside the presence of the jury. Vol. 4 at 176. Mr. Hatter confirmed he was the court appointed counsel for petitioner in a separate assault case. The trial court explained that "in furtherance of that representation [Hatter] had some conversations with the complaining witness in this case and [was] being called as a witness." The trial court advised he wanted to clear up any attorney-client privilege questions and wanted to make sure Mr. Hatter would not be placed in "any peril" by asking him to testify. Vol. 4 at 177. Defense counsel interjected that he would not be asking Mr. Hatter any questions that would violate the attorney-client privilege but, because it was a unique situation, suggested getting it on the record that petitioner understood "this testimony and that he is allowing me to put Mr. Hatter on the stand." The trial court then advised petitioner of the attorney-client privilege and confirmed he understood no one could compel Mr. Hatter to violate the privilege without petitioner's consent. Vol. 4 at 178-79. Petitioner averred he understood and was "going to waive that privilege and allow [Hatter] to testify" about discussions Mr. Hatter had with Fisher. Vol. 4 at 178-79. Mr. Hatter then stated:

> I'm comfortable testifying to observations that I made, having seen Fisher and things of that nature. The conversations, I believe were work product.

Vol. 4 at 180. After further discussions concerning the attorney-client privilege and work product immunity, and whether Mr. Hatter's communications with Fisher fell under attorney-client protection or was work product, the trial court noted that if petitioner waived the attorney-client privilege with Hatter, the privilege was waived *in toto*, and that communications between petitioner and Hatter

would also be open to questioning by the State, not just communications between Hatter and Fisher. At which point defense counsel, explaining he was not privy to any of the communications between Mr. Hatter and petitioner, stated:

> I think [Hatter's] invoked his right to work product, which according to – I think he has the right to do. So with that being said, I think what we're getting is to – I think I'm going to move on to my next witness.

Vol. 4 at 180-93. Mr. Hatter was then excused as a witness.[3]

By this ground, petitioner contends the trial court abused its discretion when it "ruled" petitioner "must" waive his attorney-client privilege in order for Mr. Hatter and the notary he had hired to testify as to their observations of Fisher's physical appearance and demeanor when they met with her during the 8-day period in issue.

This Court initially notes it is clear from a reading of the trial transcript that while the trial court, outside the presence of the jury, entertained a discussion about attorney-client issues, the trial court did <u>not</u> formally rule or otherwise <u>require</u> petitioner to waive his attorney-client privilege with Mr. Hatter. Instead, petitioner waived the privilege voluntarily. However, when subsequent discussions confirmed petitioner could not pick and choose the matters to which he was waiving the privilege and the matters to which he was asserting the privilege, defense counsel made the decision to excuse Mr. Hatter as a witness. Petitioner's claim of trial court error in <u>requiring</u> petitioner to waive his attorney-client privilege is without merit.

To the extent the trial judge's comments regarding attorney-client privilege were premature, the comments were for the purpose of "clearing up any attorney-client issues" and may have benefitted petitioner and his counsel by forewarning them of the issue outside the presence of the jury,

---

[3]The State subsequently stated its position that after a client waives the attorney-client privilege, the attorney cannot then assert the work product privilege as a basis for refusing to testify. However, if the client waives the attorney-client privilege, and then calls the attorney to testify, then all matters previously protected by the attorney-client privilege which has been waived, are open for discussion. Vol. 5 at 7-8.

and enabling them to make a knowing decision as to whether to actually call Mr. Hatter as a witness. By invoking work product immunity, the discussion may have focused on the attorney-client privilege and conversations between Mr. Hatter and the victim rather than focusing on observations of the victim, but in any event, and as noted above, the trial court did <u>not</u> mandate a waiver of the privilege. Further, as discussed below in addressing petitioner's ineffective assistance of counsel claims, it cannot be said, and it is the opinion of the undersigned, that after participating in the hearing outside the presence of the jury, trial counsel became concerned as to what might be opened up by Mr. Hatter's testimony and, at that stage, made a strategic decision to not call Mr. Hatter as a witness.

In any event, the Texas Court of Criminal Appeals denied this claim of abuse of discretion/ trial court error on state habeas review. Petitioner has not shown the state court's denial was based on an unreasonable application of federal law as determined by the United States Supreme Court, or on an unreasonable determination of the facts in light of the evidence. Petitioner's claim must be denied.

### 4. *Reference to an Extraneous Offense*

During the State's case-in-chief, the trial court determined "there was a door opened with regard to a comment made about the Defendant not having any prior medical history." Vol. 4 at 112. In response, the State called Deputy Jeremy Dunn to testify soley as to an encounter he had with petitioner on February 8, 2006 during which petitioner "exhibited some type of convulsing, seizure-type deal where he moved around on the ground and that kind of thing, and uttered the words to me – he knew my first name – Jeremy, help me, I'm having a seizure." Vol. 4 at 119. The State then asked, "[D]id you know the Defendant from before just because Booker's a small town? Is that how he knew your name or --" to which the deputy replied, "Prior dealings with him, yeah." Vol. 4 at 120. The State then asked the deputy if he knew whether petitioner had "to be treated for any – for that

seizure," to which the deputy related that petitioner was transported by ambulance to the hospital "but was released shortly after." *Id.* The State passed the witness but when defense counsel had no questions, the witness was released. Defense counsel did not make any objections to the witness's testimony.

After a lunch break, defense counsel requested a mistrial based on the deputy's reference to "prior dealings" with petitioner. Vol. 4 at 121. The State responded that the deputy's testimony could have referred to any number of non-law enforcement "dealings" in a small town, and noted that any instruction from the trial court to disregard at this point would draw attention to the innocuous statement. Vol. 4 at 122. The trial court opined that he believed "the inference to the jury was that there were extraneous matters that that deputy had been involved with with the Defendant prior to that" and noted he was "inclined to sustain the objection, instruct the jury, and grant the mistrial." Vol. 4 at 122-23. After reviewing the transcript, the trial court sustained the objection and granted the request to instruct the jury, but denied petitioner a mistrial explaining, "I don't know if the jury understands with – as much as we do with regard to law enforcement involvement, and I don't know how prejudicial that was." Vol. 4 at 124-25. The following then transpired:

COUNSEL:    I would just as soon we just go on.

COURT:    Okay. You don't want me to draw their attention to it any more?

COUNSEL:    I think at this moment that I – no.

COURT:    Okay. I understand that and that – I'll leave that totally up to you.

COUNSEL:    Okay.

COURT:    There will be an instruction in the charge with regard to extraneous offenses, so – for what purposes they can consider those, so perhaps that will be –

COUNSEL:    I think at this point to bring it up again is just – would actually just be putting a highlighter on something they – they –

COURT:      May not have heard in the first place.

COUNSEL:   We don't know. We may never know.

Vol. 4 at 125-26.

Petitioner contends the trial court abused its discretion "[w]hen it failed to declare a mistrial" when Deputy Dunn testified he knew petitioner "from before" or that petitioner knew the deputy's name as a result of "prior dealings with him." Petitioner contends the deputy's comment went beyond his observations, allowed the State "to improperly insert evidence of an Extraneous Offense," and "prejudiced the jury's verdict." Petitioner concludes the failure to declare a mistrial was an abuse of discretion and rendered the entire trial unfair.

To the extent petitioner is simply arguing trial court error in allowing the deputy's comment, petitioner waived this claim because trial counsel did not make a contemporaneous objection at the time of Dunn's testimony. To the extent petitioner is arguing trial court error for failing to grant a mistrial, the undersigned notes that when the trial court offered an instruction to disregard the deputy's statement, defense counsel refused and explained why. The attorney's decision to not ask for an instruction to disregard was trial strategy. Further, a mistrial generally will not be granted if an instruction to the jury will suffice in curing any erroneously admitted testimony. The undersigned finds the deputy's comment was too unspecific to conclusively relate any particular improper extraneous offense and, even if it did, the jury charge instructed the jury to disregard any mention of any extraneous offenses unless certain criteria were met. Petitioner has not and cannot demonstrate the deputy's single comment had a substantial and injurious effect or influence in determining the jury's verdict or that the admission of this statement rendered petitioner's entire trial unfair. Petitioner's claim is without merit.

Moreover, the Texas Court of Criminal Appeals denied this claim of abuse of trial court discretion or trial court error on state habeas review. Petitioner has not shown the state court's denial

was based on an unreasonable application of federal law as determined by the United States Supreme Court, or on an unreasonable determination of the facts in light of the evidence. Petitioner's claim must be denied.

## C. Ineffective Assistance of Counsel

In order to obtain habeas corpus relief on the ground of ineffective assistance of counsel, a petitioner must demonstrate not only that his counsel's performance was deficient, but also that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To demonstrate deficiency, the petitioner must show counsel's actions "fell below an objective standard of reasonableness." *Id.* at 668, 104 S.Ct. at 2064. However, a strong presumption exists "that trial counsel rendered adequate assistance and that the challenged conduct was reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066). To demonstrate prejudice, a petitioner must show that a "reasonable probability" exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. If a petitioner fails to show either the deficiency or prejudice prong of the *Strickland* test, then the Court need not consider the other prong. *Id.* at 697, 104 S.Ct. at 2069.

## *1. Trial Counsel*

Petitioner contends trial counsel was deficient because he "failed to object to the trial court's ruling that [petitioner] must waive his attorney-client privilege so that his court appointed counsel from a previous criminal case (Todd Hatter) could testify to his observations of [Fisher's] physical appearance and demeanor during Hatter's fact to face meeting in regards to Fisher's affidavit of non-prosecution." As discussed above, petitioner sought to call Mr. Hatter and the notary Mr. Hatter employed as witnesses to testify about their meetings with the victim. As previously discussed, the

trial court did <u>not</u> formally rule that petitioner had to waive the attorney-client privilege in order for Mr. Hatter and the notary to testify as to their dealings with Fisher, or to testify about Fisher's physical condition when they met with her. Trial counsel could not object to a non-existent ruling and was not deficient for failing to do so.[4]

More importantly, Mr. Hatter invoked attorney work product as to any conversations he had with Fisher during their meeting. Petitioner contends trial counsel was deficient for failing to object to the trial court "allowing Mr. Hatter to invoke his work product privilege" but what actually happened was that trial counsel agreed Mr. Hatter's claim of work product immunity was well taken. In any event, petitioner fails to identify the valid basis on which trial counsel could have objected. Petitioner has not shown trial counsel was deficient for failing to object to Hatter invoking work product immunity as to conversations he had with Fisher and has failed to show, after the parties and the Court had discussed how petitioner's waiver of the attorney-client privilege with Mr. Hatter might result in opening the door as to all discussions petitioner had with Mr. Hatter, counsel made a strategic decision and dismissed Mr. Hatter as a witness. Consequently, any invocation of the attorney work product privilege by Mr. Hatter was irrelevant.

Although petitioner contends the testimony of Hatter and the notary were "critical" and "material" and prevented petitioner from "presenting a complete defense," and denied petitioner due process, petitioner has not presented at trial, on direct appeal, in his petition for discretionary review, on state habeas review, or on federal habeas review, a verified account of what Mr. Hatter's or the notary's purported testimony would have been. Instead, petitioner presents his conclusions, unsupported by anything other than his own assertions, that their testimony "would have refuted Ms. Fisher's testimony that she sustained injuries to her face and body from an assault by [petitioner] and

---

[4]While the trial court did comment on what questions and/or testimony might be allowed on cross-examination, it is difficult to see how such adversely affected petitioner since it gave his trial counsel advance notice of what testimony the door might open.

not from her jumping from her own vehicle." There are no affidavits or statements from these witnesses or anything else to indicate whether testimony from Mr. Hatter and/or the notary would have been beneficial to petitioner's case.

The undersigned further notes their testimony would have been cumulative. Petitioner called his nephew, Ryan McQuitty, as a witness. The nephew testified he and his wife had dinner with petitioner and Fisher at an Amarillo restaurant on the night of April 15, 2011 (the same day she met with the notary), that petitioner and Fisher arrived separately, and that "they were laughing, carrying on, just like, you know, we were all joking at the table and just conversation. Nothing unusual." Vol. 5 at 14-20. The nephew testified Fisher was not wearing sunglasses inside the restaurant, that he did not notice anything unusual about Fisher's facial appearance, and that he specifically did not observe Fisher's face being swollen or bruised, or any cuts or marks on her face or lips. Vol. 5 at 20-21. He also testified Fisher did not complain that her mouth hurt or that her teeth were loose, or have any problems eating or carrying on a conversation. Vol. 5 at 21-22. The nephew testified that if Fisher's face had been badly beaten and bruised he would have noticed, would have asked what happened, and if she had told him his uncle had beaten her or was holding her against her will, he "probably would have called the cops." Vol. 5 at 34. Since petitioner was able to put on evidence that Fisher did not appear to have visible injuries on the dates and times that she claimed, he was not prevented from putting on a complete defense. This claim of ineffective assistance of trial counsel is without merit and should be denied.

During voir dire of the jury, the State prosecutor asked members of the venire what they think of when they think of "kidnapping." After one juror opined that the term could mean different things and attempted to give an example, the prosecutor stated:

> So there can be kidnapping – a parent that doesn't have parental authority takes a child when they're not supposed to have that child? That could be a kidnapping. Who here thought of – and my co-counsel and I, she's a lot younger than I am and she doesn't

remember Patty Hearst, but I do. Everybody remember Patty Hearst? Abduction of a woman, you know – see? I told you they'd know. The – the – putting the sack over the head, throwing them in a – you know, into a vehicle, driving off, throwing them into a dark corner, they don't know who the heck this person is. You think of this, don't you? I don't know if y'all can see that. You think of, you know hogtied and blindfolded. You think of, you know, the ski mask holding somebody at gunpoint. Right?

Do you think about – this is little Jaycee Dugard. Remember her? This was the little girl that was abducted right down the street from where she lived. And she was held by Phillip Garrido for 20 years.

You think about Elizabeth Smart. Ryan David Mitchell abducted her from her – from her bedroom window. Right? This is what you think of, I think a lot of times, when you think about kidnapping.

Vol. 2 at 51-52.[5]

During closing argument, the State prosecutor stated:

And now it comes your time to decide what happened that night. And make no mistake, when you go back there to deliberate, you need to think about this. You need to think about Tiffany [Fisher]. Because as surely as Elizabeth Smart and Jaycee Dugard were kidnapped, and terrorized, that's exactly what happened to Tiffany Fisher. She wasn't hogtied. She wasn't – didn't have a hood thrown over her, but the terror that she endured that week, that day is a terror that no person should endure. It is a terror that calls upon you to find that man guilty of aggravated kidnapping.

Vol. 5 at 114.

By his second claim of ineffective assistance of trial counsel, petitioner contends trial counsel was deficient "when he failed to object to the state Prosecutor [] comparing [petitioner] to the kidnappers of Elizabeth Smart and Jaycee Dugard" during voir dire and in closing argument. Petitioner contends the "comparison" was an "improper and erroneous interjection of facts not in the record that any constitutionally effective attorney would have objected to" and that trial counsel's failure to object caused irreparable harm to petitioner.

---

[5] There were additional references to Elizabeth Smart and Jaycee Dugard kidnappings during voir dire. Vol. 2 at 63-64 ("If everybody remembers Elizabeth Smart, I think she was found in a park . . . they had a wig on her and a veil and some sunglasses, but she was in a park where she could very likely be found." Vol. 2 at 64-65 ("I don't think there was a weapon involved – I could be wrong – in the Elizabeth Smart case, I don't think there was, when he climbed into her bedroom. And I know that there wasn't in that Jaycee Dugard." Vol. 2 at 74 (as noted by a potential juror, "You used the Elizabeth Smart example earlier, and she was out in public. She could have walked up to a stranger and said, hey I've been kidnapped and she didn't.").

The State's references, in voir dire, to the kidnappings of Smart and Duggard (as well as Patty Hearst) were used to exemplify what many think of as a typical kidnapping. The fleeting reference to these types of "traditional" kidnappings was to demonstrate how the elements of the offense of kidnapping could also be met without a person being physically restrained with external implements or manually abducted. They were also used to demonstrate how the elements of the offense of kidnapping does not require the use of a weapon and how appearing in public does not necessarily negate the element of abduction. The State was not comparing petitioner or his acts to other criminal cases or the defenses they raised in order to prejudice the jury against him or otherwise inflame the jury. Similarly, during closing argument, the State did not inject into the record facts which were not in evidence, nor did the State ask the jury to punish petitioner because of those unrelated kidnappings. The limited reference to Smith and Dugard was not extremely or manifestly improper. Trial counsel was not deficient in failing to object to the passing references.

Again, petitioner has not argued or demonstrated the Texas Court of Criminal Appeals' denial of this claim was objectively unreasonable. Petitioner's claims of ineffective assistance of trial counsel must be denied.

### 2. *Appellate Counsel*

Petitioner contends appellate counsel was deficient because he failed to raise, as a ground of error on direct appeal, that the Randall County trial court did not have venue over the charged offense. As discussed above, the State established venue in Randall County by a preponderance of the evidence. Petitioner cannot show a reasonable probability that if appellate counsel had raised the lack of venue as a ground on appeal that the result of the proceeding would have been different, or that petitioner's trial was fundamentally unfair. Moreover, in the state habeas proceedings, petitioner's appellate counsel submitted an affidavit wherein he stated his professional opinion that the record

sufficiently established venue and related he was personally familiar with the portion of the road where Fisher testified part of the offense occurred and knew that it was in Randall County. Based on these facts, appellate counsel's decision to not raise the issue of venue on appeal fell within the wide range of reasonable professional assistance. Petitioner has not shown appellate counsel was deficient, or that petitioner was prejudiced, by counsel's failure to raise the issue of venue as a ground of error on appeal.

Petitioner also contends appellate counsel was deficient for failing to raise the State's "improper insertion of an extraneous offense," *to wit*: Deputy Dunn's comment that petitioner knew his name or that he knew petitioner from "prior dealings." Petitioner contends the State used Dunn's testimony to impeach his character and prove conformity.

As discussed above, since no contemporaneous objection to that testimony was made at the time, then error was probably not preserved. Even if trial counsel's later objection would have preserved error, the issue became moot when counsel made the strategic decision not to draw further attention to the remark. Moreover, as the Court has found above, the deputy's comment was too unspecific to conclusively relate any particular improper extraneous offense and, even if it did, the jury charge instructed the jury to disregard any mention of any extraneous offenses unless certain criteria were met. Petitioner cannot demonstrate the deputy's single, vague comment constituted the admission of an extraneous offense and petitioner has certainly not established it had an injurious effect or influence in determining the jury's verdict. He has not shown the outcome of the direct appeal would have been different if the issue had been raised by appellate counsel. Additionally, during the state habeas proceedings, appellate counsel related, by affidavit, his professional opinion that the error, if any, was not preserved presumably due to trial counsel's strategy. Petitioner cannot show appellate counsel's decision to not assert, on appeal, that Dunn's comment was reversible error fell outside the wide range of reasonable professional assistance. Petitioner has not shown appellate

counsel was deficient, or that petitioner was prejudiced, by counsel's failure to raise this issue as a ground of error on appeal. Petitioner's claim is without merit.

Moreover, the Texas Court of Criminal Appeals denied this claim on state habeas review. Petitioner has not shown the state court's denial was based on an unreasonable application of federal law as determined by the United States Supreme Court, or on an unreasonable determination of the facts in light of the evidence. Petitioner's claim must be denied.

### D. Sufficiency of the Evidence

Petitioner contends the evidence is factually insufficient to support his conviction for aggravated kidnapping. Claims of *factual* insufficiency are not cognizable in state courts reviewing convictions, *Brooks v. State*, 323 S.W.3d 893 (Tex.Crim.App. 2010), or on federal habeas review. *Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002). Petitioner's claim of factual insufficiency must be denied.

Petitioner also contends the evidence is legally insufficient to support his conviction for aggravated kidnapping. Specifically, petitioner argues the evidence did not establish petitioner abducted Fisher or secreted her in a place she was unlikely to be found.[6] In essence, petitioner appears simply to be disagreeing with the fact finder's resolution of the evidence and credibility choices.

Petitioner raised this claim on direct appeal. In its written opinion, the state appellate court cited and explicitly applied the United States Supreme Court case of *Jackson v. Virginia* and its progeny which set forth the standards for reviewing legal insufficiency of the evidence claims. Under the appropriate standards, the state appellate court discussed Fisher's testimony and how her testimony as to petitioner's statements and actions met the elements of the charged offense, ultimately

---

[6]Petitioner also appears to contend the evidence was legally insufficient because no firearm was actually found on petitioner and no evidence of a crime scene was found in Randall County.

finding the evidence was sufficient to allow a rational jury to conlude Fisher did not willingly

accompany petitioner during the period of April 10 through April 18, 2011. Petitioner has not

attempted to demonstrate, much less demonstrated, the state appellate court's decision was objectively

unreasonable under Supreme Court precedence. Petitioner's disagreement with the jury's evaluation

of the evidence, primarily Fisher's testimony, is not sufficient to entitle petitioner to federal habeas

corpus relief. Petitioner's claims must be denied.

VIII.
RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States

District Judge that the Petition for Writ of Habeas Corpus by a Person in State Custody filed by

petitioner DARIN WILLIAM McQUITTY be DENIED.

IX.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this _27th_ day of September 2017.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

**\* NOTICE OF RIGHT TO OBJECT \***

Any party may object to these proposed findings, conclusions and recommendation. In the
event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is
fourteen (14) days from the date of filing as indicated by the "entered" date directly above the

signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).